OPINION OF THE COURT
Stanley Gartenstein, J.
This proceeding to terminate the parental rights of respondent mother on the grounds of mental illness as defined in Social Services Law § 384-b (6) (a) was commenced almost four years ago, in 1981. It lay dormant until June 21, 1984 when it was restored upon perfection of jurisdiction. On October 11, 1984, a mental examination to determine whether or not respondent was in fact mentally ill within the statutory definition was ordered as authorized by Social Services Law § 384-b (6) (e).
The examination in question was inconclusive and its results are of no help to the parties or the court. Its equivocal results may be attributed to the fact that certain mental illnesses are cyclical and contain periods of remission during which the patient appears totally normal. These intervals are in fact part of the illness. (Cf. Dodrer v Dodrer, 183 Md 413, 37 A2d 919.)
Petitioner’s application for a second mental examination without which its case will collapse is now before the court. The enabling statute (Social Services Law § 384-b [6] [e]) fails to *1024 indicate any legal basis for ordering a second examination. Additionally, this cause of action has been held to be a creature of statute requiring strict adherence to its specific terms. (Matter of Ricky Ralph M., 56 NY2d 77; Matter of Roxann Joyce M., 99 Misc 2d 390.)
The question of whether or not this court may order a second mental examination has apparently never been ruled upon in connection with proceedings to terminate parental rights on the grounds of mental disability. There does exist, however, persuasive authority which may be extended by analogy.
In Weiss v Weiss (31 Misc 2d 256), the Honorable Bernard S. Meyer, then a Justice of the Supreme Court of Nassau County, ruled in favor of a second mental examination with regard to a statutory cause of action for annulment based upon five years of incurable insanity. (Cf. Domestic Relations Law § 7 [5].) In doing so, Justice Meyer stated (p 261): “further, since the opening sentence of [the statute] simply states the minimum required before judgment can be entered, it does not limit the number of examinations. The court has discretion to order more than one examination if good cause for so doing is shown.”
Based upon the equivocal nature of the psychiatric reports therein, the Weiss court found good cause to exist and rendered its order accordingly.
This court does not believe it untoward to extend Weiss (supra) by analogy to these facts and this cause of action. Primarily, Weiss dealt with a cause of action for dissolution of a marriage at a time prior to divorce reform when it was the public policy to place every possible obstacle in the way of dissolving a marriage (cf. Ann., 113 ALR 1248; Ann., 24 ALR2d 873). Even the Legislature demonstrated timidity by seeking to avoid the appearance of any enactment which might then have been construed as relaxing the existing taboos against divorce. Accordingly, the so-called “subdivision (5)” marital dissolution was labeled “annulment”, implying, by analogy to the law of contracts, a defect in the basic offer and acceptance of the original marital contract; as opposed to “divorce” connoting equitable relief dissolving the status arising out of contract stemming from a cause arising after its solemnization. Seen in this light, Weiss (supra) was a courageous inroad upon the existing patterns of strict constructionism.
In contrast thereto, the enabling statute herein, Social Services Law § 384-b (1) (b), states: “(b) The legislature further finds that many children who have been placed in foster care experience unnecessarily protracted stays in such care without *1025 being adopted or returned to their parents or other custodians. Such unnecessary stays may deprive these children of positive, nurturing family relationships and have deleterious effects on their development into responsible, productive citizens. The legislature further finds that provision of a timely procedure for the termination, in appropriate cases, of the rights of the natural parents could reduce such unnecessary stays.”
It is clear that, in contrast to the atmosphere in which the Weiss court functioned, it is the legislative mandate that this court do all within its power to move these proceedings forward to conclusion toward the end of finalizing the status of the child in issue who is our ward.
The motion is granted. A copy of this order shall be forwarded by the clerk to court’s Mental Health Clinic with instructions that arrangements for this examination be made and carried forward on an expedited basis. Respective counsel shall have the right to be present at this examination to function within the parameters set forth by the Court of Appeals in Matter of Alexander L. (60 NY2d 329; cf. Matter of Jose T., 126 Misc 2d 559).