■ In the Matter of TREBOR UU., and Another, Alleged to be the Children of a Mentally Ill Parent. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; TSHARNIA VV., Appellant. [743 NYS2d 605] —Lahtinen, J. Appeal from an order of the Family Court of Clinton County (Lawliss, J.), entered April 5, 2001, which granted petitioner's application, in a

proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's children to be the children of a mentally ill parent, and terminated respondent's parental rights.

Respondent is the mother of two sons, Trebor (born in 1992) and Tahran (born in 1994), who have been in the care and custody of petitioner since December 1998. In November 1999, Family Court determined that the children had been neglected by respondent under Family Court Act article 10.[1] The children continued in foster care pursuant to orders extending their placement.

In October 2000, petitioner filed a petition pursuant to Social Services Law § 384-b seeking to terminate respondent's parental rights on the grounds of permanent neglect and mental illness. At the conclusion of a bifurcated hearing addressing only the issue of respondent's mental illness, Family Court determined that respondent suffered from a mental illness as that term is defined in Social Services Law § 384-b (6) (a)[2] and that her mental illness was an enduring condition which, for the present and foreseeable future, rendered her unable to provide proper and adequate care for her children. The court then transferred guardianship and custody of the children to petitioner.[3] Respondent now appeals.

Respondent first argues that the expert testimony which provided the clear and convincing evidence (see, Social Services Law § 384-b [3] [g]) supporting Family Court's determination that she suffered from a mental illness was improper because the testimony did not set forth the methodologies used by the expert. We disagree. The court-appointed clinical psychologist, Margaret Santora, testified that respondent suffered from a "personality disorder, mixed type, with anti-social borderline and histronic features" which she described as a "mixed group of features" and "significant features from each of several kinds of personality problems." The written report of clinical psychologist David Horenstein, who had previously evaluated

---

**1.** That determination was affirmed by this Court (*Matter of Trebor UU.*, 279 AD2d 735).

**2.** Social Services Law § 384-b (6) (a) defines a mental illness as "an affliction with a mental disease or mental condition which is manifested by a disorder or disturbance in behavior, feeling, thinking or judgment to such an extent that if such child were placed in or returned to the custody of the parent, the child would be in danger of becoming a neglected child as defined in the family court act."

**3.** In that order, Family Court also dismissed the permanent neglect cause of action without prejudice. That portion of the order is not at issue on this appeal.

respondent,[4] stated that respondent evidenced a borderline personality disorder. Katherine Dayton-Kistler, a clinical social worker called as a witness by respondent, agreed that respondent exhibited a borderline personality disorder. Santora's testimony revealed that she conducted a clinical interview of respondent and reviewed numerous documents, including respondent's prior mental health records (which included Horenstein's written report) to form the basis of her diagnosis and opinion. This procedure provided a sufficient basis for Santora's conclusion that respondent suffered from a mental illness under Social Services Law § 384-b (6) (a) (*see, Matter of Joshua F.*, 291 AD2d 742, 743).

Finally, we disagree with respondent that petitioner failed to establish by clear and convincing evidence that respondent's mental illness rendered her unable to provide proper and adequate care for her children in the foreseeable future. Santora testified that respondent's mental affliction was manifested by a disorder or disturbance in behavior, feeling, thinking and judgment, that respondent had not changed the way she understands her obligations and did not have the capacity presently or in the foreseeable future to care for her children, in part, because she had not altered her thinking (*see, e.g., Matter of Joseph ZZ.*, 245 AD2d 881, 884, *lv denied* 91 NY2d 810). While Horenstein and Dayton-Kistler were more optimistic about respondent's future ability to care for her children if given sufficient treatment and support, Dayton-Kistler admitted that, for a person with a borderline personality disorder, the prognosis is never rosy and there is no such thing as recovery. Notably, we have consistently held that the possibility that respondent's condition, with proper treatment, may improve in the future is insufficient to overturn Family Court's determination (*see, Matter of Harris AA.*, 285 AD2d 755, 757; *Matter of Joseph T.*, 220 AD2d 893, 895). Accordingly, to the extent that the expert opinions conflict with respect to respondent's future ability to care for her children, we agree with Family Court's resolution of that issue (*see, Matter of Karen Y.*, 156 AD2d 823, *lv denied* 75 NY2d 710) and find that the record fully supports Family Court's determination that respondent was not capable of caring for her children presently or in the foreseeable future (*see, Matter of Harris AA., supra; Matter of Shane PP.*, 283 AD2d 725, *lv denied* 96 NY2d 720; *Matter of Mathew Z.*, 279 AD2d 904).

Mercure, J.P., Crew III, Mugglin and Rose, JJ., concur. Ordered that the order is affirmed, without costs.

---

4. Horenstein did not testify, but his report was received in evidence without objection.