In the Matter of CHELSEA KK., Alleged to be the Child of a Mentally Ill Parent. CLINTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; AMY LL., Appellant. [812 NYS2d 173]—

Lahtinen, J. Appeal from an order of the Family Court of Clinton County (Lawliss, J.), entered September 14, 2005, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate respondent's child to be the child of a mentally ill parent, and terminated respondent's parental rights.

Respondent is the parent of a daughter (born in 1999) and petitioner has been involved with various matters pertaining to the child since shortly after her birth. In 2003, respondent and her boyfriend, the father of the child, were arrested on charges that they had sexually abused respondent's 12-year-old cousin and, thereafter, petitioner commenced a neglect proceeding. Neglect was found based upon certain admissions by respondent and the father, the child was removed from the home, and we upheld Family Court's disposition in the father's appeal (*see Matter of Chelsea K.*, 15 AD3d 794 [2005], *appeal dismissed* 4 NY3d 869 [2005]). In the criminal case, respondent was found guilty in October 2003 of the misdemeanor of endangering the welfare of a child, acquitted of more serious felony charges, and sentenced to six months in prison. Family Court issued a series of orders extending the child's placement.

A permanent neglect petition seeking the termination of respondent's parental rights was filed in December 2004. A mental health evaluation of respondent by Caleo Counseling Services resulted in diagnoses of pedophilia, antisocial personality disorder, adjustment disorder with depressed mood and learning disorder not otherwise specified. In April 2005, petitioner filed the instant petition seeking to terminate respondent's parental rights upon the additional ground that she suffers from mental illness that renders her unable to care for the child both presently and for the foreseeable future. Family Court directed respondent to undergo a mental health evaluation conducted by psychologist Richard Liotta. The permanent neglect petition was dismissed, but, following a hearing, Family Court granted the petition alleging mental illness. Respondent appeals.

Terminating parental rights on the ground of mental illness requires the petitioning agency to show "by clear and convincing evidence, that the parent is presently, and will continue for the foreseeable future to be, unable to provide proper and adequate care for the child[ ] by reason of the parent's mental ill-

ness" (*Matter of Donald W.*, 17 AD3d 728, 728-729 [2005], *lv denied* 5 NY3d 705 [2005]; *see* Social Services Law § 384-b [3] [g]; *Matter of Jeran PP.*, 6 AD3d 994, 996 [2004]; *Matter of Harris AA.*, 285 AD2d 755, 756 [2001]). This necessarily entails the court determining whether the parent suffers from a "mental illness" as defined by Social Services Law § 384-b (6) (a) and, if so, "whether the evidence sufficiently establishes that [the parent's] mental illness has a significant impact on her parenting abilities which, for the present and foreseeable future, renders her unable to provide adequate care for her child[ ]" (*Matter of Jeran PP., supra* at 996; *see* Social Services Law § 384-b [4] [c]).

Here, a detailed report prepared by Liotta was admitted into evidence without objection and he also testified at the hearing. Liotta opined that respondent suffered mental illness which rendered her unable to provide adequate care for the child both presently and for the foreseeable future. He identified mental health infirmities from which respondent suffered, including pedophilia, nonexclusive type; learning disorder, not otherwise specified; antisocial personality disorder, with dependent features; and borderline intellectual functioning. In arriving at his conclusions, he interviewed respondent twice and observed a visit between respondent and the child. He reviewed various documents from earlier court proceedings involving respondent, petitioner's files, and mental health documents, and also spoke to several individuals who had provided services or treatment to respondent.

Part of the conduct underlying the pedophilia diagnosis involved respondent's admission that she encouraged her 12-year-old cousin to engage in sex with respondent's boyfriend and respondent. There was, however, some conflict regarding whether this was an isolated incident or an ongoing abusive pattern, and whether there was a period in which respondent groomed the child before involving her in the sexual activity. Since it was unclear whether this sexual conduct had occurred over a period of six months or more, Family Court found paraphilia and not pedophilia.

Nevertheless, Liotta stated on cross-examination that whether respondent's condition was classified as a general pedophilia pattern or a more isolated paraphilia would not change his overall opinion. He amply explained that respondent presented a risk of sexual offending behavior and she had not made sufficient progress to combat this behavior. Liotta further testified that respondent's antisocial personality disorder was her primary difficulty, that it would have a long-term impact on her

ability to parent the child and that such disorder was acute enough in respondent's case to prevent her from being able to provide proper care to the child for the foreseeable future. Review of the record reveals sufficient expert evidence to support Family Court's determination that respondent suffers from a mental illness such that she is unable to care for the child presently and for the foreseeable future (*see generally Matter of Anna V.*, 23 AD3d 975, 976-977 [2005]).

Crew III, J.P., Mugglin, Rose and Kane, JJ., concur. Ordered that the order is affirmed, without costs.